UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSICA MERCIER ) | |
| ) | Civil Action No: |
| Plaintiff, ) | |
| v. | |
| GREENWICH ACADEMY, INC., ) | |
| THE TRUSTEES OF WESTMINSTER ) | |
| SCHOOL, INCORPORATED DBA ) | |
| WESTMINSTER SCHOOL AND ) | |
| BRYAN TAWNEY ) | |
| Defendants ) | JANUARY 2, 2013 |

## COMPLAINT

I. **PARTIES**

1. The plaintiff, Jessica Mercier, is a citizen of Massachusetts and permanently resides in South Hadley, Massachusetts.

2. The defendant, Greenwich Academy, Inc., (hereinafter referred to as "Greenwich") is a private preparatory school incorporated under the laws of the State of Connecticut, with its main campus located in Greenwich, Connecticut.

3. The defendant, The Trustees of Westminster School, Incorporated, (hereinafter referred to as "Westminster") is a private preparatory high school incorporated under the laws of the State of Connecticut and operating under the name of Westminster School with its main campus in Simsbury, Connecticut.

4. The defendant, Bryan Tawney, is a resident of Connecticut.

1

## II. JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1332(a)(1). The plaintiff is a citizen of Massachusetts and the defendants are citizens of Connecticut. Thus, the parties are diverse. In the addition, the matter in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interests and costs.

5. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. Section 1391(a).

## III COUNT ONE: FACTUAL ALLEGATIONS AGAINST GREENWICH

6. At all relevant times hereto, the plaintiff was a student at Westminster.

7. On or about January 4, 2011, the plaintiff was a member of the Women's Westminster varsity basketball team and was playing against the Greenwich varsity basketball team in Greenwich, Connecticut.

8. The plaintiff was one of the leading players on the Westminster team and was the leading scorer in the first half. In the second half of the game, the plaintiff was elbowed in the front of the head by a Greenwich player and Westminster's coach, Bryan Tawny, called a timeout.

9. At all relevant times hereto, Coach Tawny was an agent, servant , employee, teacher and varsity coach of Westminster.

10. At the end of the time-out, the plaintiff told Coach Tawny that she was really dizzy and her eyes were blurry and she needed to sit down.

11. Coach Tawny allowed her to sit for a while, and while on the bench, the plaintiff uncharacteristically sat quietly with her head in her hands and leaning on her knees.

12. Notwithstanding the plaintiff's appearance, after about five minutes, Coach Tawny asked her if she was ready to go in and she understood his request as an order to go back into the game.

13. Upon re-entering the game, the plaintiff lost her balance as a Greenwich player was about to shoot a foul shot and the plaintiff fell into another player who grabbed her to keep her from falling.

14. As a result of her near fall, the referee had to re-set the play for the foul shot.

15. The plaintiff continued to play but was disoriented.

16. A few moments later, the plaintiff was struck again in the back of the head by a Greenwich player.

17. After the second blow to the head, the plaintiff felt 'weird' and asked the coach to remove her from the game.

18. The plaintiff did not return to the game and did not remember the last part of the game as a result of concussive amnesia.

19. As a result of the first blow to her head, the plaintiff exhibited signs of a concussion and acted out of character while on the bench.

20. At all relevant times hereto, Greenwich was the home team school and was responsible for furnishing a trainer to attend to any injuries suffered by players on either team.

21. At all relevant times hereto, the Greenwich trainer was an agent, servant or employee of Greenwich.

22. The injuries and losses suffered and sustained by the plaintiff as a result of the second blow to her head was due to the negligence and carelessness of Greenwich and its trainer in one or more of the following ways:

a) In that it was the duty and obligation of Greenwich to provide a qualified trainer to examine and evaluate any injuries to the plaintiff and others, and it failed to do so;

b) In that the Greenwich trainer failed to notice the first trauma and injury to the plaintiff and the unnatural way in which she was acting thereafter;

c) In that the Greenwich trainer failed to examine and evaluate the plaintiff for a possible concussion or other injuries despite her obvious signs and symptoms. If he or she had done so, the plaintiff would not have been allowed to continue to play, and would not have suffered a second blow to her head, which blow caused most, if not all, of plaintiff's losses and injuries.

23. As a result of the negligence and carelessness of the defendant, its agents, servants and employees, and as a result of the second blow to the plaintiff's head, the plaintiff suffered severe and painful injuries and other losses as follows:

a) After the second blow to the head, the plaintiff suffered headaches, and impairment to her vision.

b) While in class, she was unable to concentrate, pay attention, or read the writing on the school board or in her book.  She was diagnosed with a concussion by the school nurse and was sent home.

c) While at home, the plaintiff had no energy and slept the entire time.  She attempted to return to school a week later, but became very sick and nauseous and was told to return home.

d) Subsequently, the plaintiff began medical treatment, and was put on brain rest in a dark room with no television or stimulus of any kind, and slept for approximately ten days.

e) She subsequently was unable to sleep for three days, and was prescribed Melatonin to help her sleep.  She suffered with extreme fatigue and had no energy at all.  She fell down the stairs at home twice because her balance was out of sync.

f) Subsequently, the plaintiff was forced to stay in bed for two months, leaving only to attend doctor's appointments.

g) When the plaintiff was finally allowed to watch television again, she could no longer see the television from her bed any longer.  She also had lots of "floaters" in her eyes and was prescribed eyeglasses.

h) In March of 2011, she visited Westminster for four days, but did not attend classes. She returned home exhausted.

i) After the March, 2011 break, she returned to school with an IEP from Dr. Markowitz, but only on a limited basis.  She was only able to attend one class at first, and eventually two.  She had to be tutored in math.  Her second semester grades were almost exclusively incomplete and accommodations were made for her to graduate on time.

j) While back at school, the plaintiff was unable to eat in the cafeteria with the rest of the students because the noise and brightness exacerbated her symptoms.

k) In her first week back at Westminster, the plaintiff's vision became seriously compromised.  She had a black box in her field of vision and had a strobeing effect. She was forced to treat with a Boston neuroopthamologist.

l) The plaintiff suffered loss of cognitive functioning, manifested by inattention, poor memory, fatigue and a sense of being overwhelmed.

m) The plaintiff was forced to take prescription medications to help cure her injuries, and sleeplessness.

n) She was diagnosed with post concussion syndrome.

o) The plaintiff suffered from anxiety and emotional distress as a result of her injuries.

p) The plaintiff was forced to miss school for a long period of time and was forced to give up playing basketball at a competitive level.

q) The plaintiff continues to suffer with painful episodic headaches, loss of concentration, memory loss, irritability, anxiety, vision problems, and insomnia.

r) The plaintiff did, and continues to, suffer from balance problems, mental fogginess, noise and light sensitivity, sleeplessness and then excessive sleep and headache, related to post concussive sensitivity.

s) The plaintiff has been forced to undergo extensive medical treatment and testing in an endeavor to cure her injuries.

t) The plaintiff was forced to incur medical and hospital bills and bills for prescriptions and expenses for a long period of time.

u) For a long period of time, the plaintiff lost the enjoyment of life's activities, including but not limited to the loss of her enjoyment in playing basketball and other physical activities, the loss of time at school and with her friends.

24. As a result of the negligence and carelessness of the defendant and its agents, servants and employees, the plaintiff has been damaged thereby.

## IV.   COUNT TWO:  FACTUAL ALLEGATIONS AGAINST WESTMINSTER

Paragraphs 1 through 21 of Count One are hereby incorporated and made Paragraphs 1 through 21 of Count Two.

22.  The injuries and losses suffered by the plaintiff as a result of the subsequent trauma to her head were due to the negligence of Westminster and its coach in one or more of the following ways:

a) In that it had a duty and obligation to have the plaintiff examined and evaluated after the first blow to her head to ensure she did not suffer a concussion or loss of functioning before she re-entered the game.

b) In that Westminster and its coach had a statutory duty under public act no. 10-62 of the Connecticut General Statutes to remove the plaintiff from the game as a result of her concussion like symptoms but failed to do so.

c) In that Westminster and its coach had a statutory duty to not permit the plaintiff to re-enter the game or participate further in any supervised team activities until she received written clearance from a licensed health care professional, but it violated that duty and failed and refused to keep her out of the game.

Paragraph 23(a) through (u) and Paragraph 24 of Count One are hereby incorporated and made Paragraphs 23 (a) through (u) and Paragraph 24 of Count Two.

## V. COUNT THREE:  NEGLIGENCE PER SE AGAINST WESTMINSTER

Paragraphs 1 through 24 of Count Two are hereby incorporated and made Paragraphs 1 through 24 of Count Three.

25. The conduct of Westminster and its coach constitutes negligence per se.

## VI. COUNT FOUR: NEGLIGENCE AGAINST BRYAN TAWNEY

Paragraphs 1 through 24 of Count Three are hereby incorporated and made Paragraphs 1 through 24 of Count Four.

25. The conduct of Bryan Tawney constitutes negligence.

## VII. COUNT FIVE: NEGLIGENCE PER SE AGAINST BRYAN TAWNEY

Paragraphs 1 through 24 of Count Four are hereby incorporated and made Paragraphs 1 through 24 of Count Five.

25. The conduct Bryan Tawney constitutes negligence per se.

## VIII. CLAIM FOR RELIEF

WHEREFORE, the plaintiff, Jessica Mercier, prays that this Court:

1. Award compensatory damages to the Plaintiff.

2. Award costs of suit pursuant to Rule 54(d) of the Federal Rules of Civil Procedure.

3. Award such other and further relief as the Court deems just and equitable.

Plaintiff demands a jury trial on all claims to which she is entitled.

Dated January 2, 2013

                          Plaintiff Jessica Mercier

                          By  /s/ _____
                          Thomas P. Moriarty
                          Moriarty, Paetzold & Sherwood
                          2230 Main Street
                          Glastonbury, CT  06033
                          Juris No. ct03778
                          Tel.  (860) 657-1010
                          Fax  (860) 657-1011
                          Email   tom@m-plaw.net