UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JESSICA MERCIER, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:13-CV-4 (JCH) |
| | : | |
| v. | : | |
| | : | |
| GREENWICH ACADEMY, INC., et al., | : | JULY 25, 2013 |
| Defendants. | : | |

**RULING RE:  MOTIONS TO DISMISS FILED BY GREENWICH ACADEMY, INC.
(DOC. NO. 17) AND THE WESTMINSTER DEFENDANTS (DOC. NO. 27)**

## I.    INTRODUCTION

Plaintiff, Jessica Mercier ("Mercier"), commenced this action against defendants

Greenwich Academy, Inc. ("Greenwich"), the Trustees of Westminster School, Inc.

("Westminster"), and Bryan Tawney ("Tawney," and, with Westminster, the

"Westminster Defendants").  The Amended Complaint (Doc. No. 25) alleges seven

counts.  Count One alleges negligence against Greenwich.  Counts Two, Three, and Six

allege negligence, negligence per se, and recklessness against Westminster.  Counts

Four, Five, and Seven allege negligence, negligence per se, and recklessness against

Tawney.

Before this court are Greenwich's Motion to Dismiss (Doc. No. 17) and the

Westminster Defendants' Motion to Dismiss (Doc. No. 27).[1]  Greenwich moves to

---

[1] Mercier filed an original Complaint on January 2, 2013 and an Amended Complaint on March 13, 2013.  See Compl. (Doc. No. 1); Am. Compl. (Doc. No. 25).  The Westminster Defendants filed a Motion to Dismiss the Amended Complaint, which is their operative Motion to Dismiss in this case.  See Tawney Mot. Dismiss (Doc. No. 27).  Greenwich filed a Motion to Dismiss the original Complaint but has not filed a Motion to Dismiss the Amended Complaint.  See Greenwich Mot. Dismiss (Doc. No. 17). However, the Amended Complaint states no additional claims against Greenwich and merely adds claims of recklessness against the Westminster Defendants.  See Am. Compl. at 8–13.  Accordingly, the court treats Greenwich's Motion to Dismiss the original Complaint as a Motion to Dismiss the Amended Complaint.

dismiss Count One, and the Westminster Defendants move to dismiss Counts Two through Seven.

## II.    FACTUAL BACKGROUND[2]

Mercier was a student at Westminster and a member of Westminster's varsity women's basketball team.  Am. Compl. at 2, ¶¶ 6–7.  On or about January 4, 2011, Westminster's and Greenwich's varsity women's basketball teams played a game in Greenwich, Connecticut.  Id. at 2, ¶ 7.  During the second half of the game, Mercier was struck in the front of the head by a player on Greenwich's team.  Id. at 2, ¶ 8.  Tawney, Westminster's coach, called a timeout.  Id.

A.   Counts One through Five[3]

Mercier told Tawney that she was dizzy, that her eyes were blurry, and that she needed to sit down.  Am. Compl. at 2, ¶ 10.  She sat on the bench for approximately five minutes, during which time Mercier alleges that she exhibited signs of a concussion and acted out of character.  Id. at 2–3, ¶ 11, 19.  Tawney asked Mercier whether she was ready to return to the game.  Id. at 3, ¶ 12.  Mercier re-entered the game.  Id. at 3, ¶ 13.  During one play, she lost her balance and alleges that she felt disoriented.  Id. at 3, ¶¶ 13, 15.  Sometime thereafter, Mercier was struck in the head a second time by a player on Greenwich's team.  Id. at 3, ¶ 16.  Mercier asked to be removed from the game.  Tawney removed her and did not put her back in for the remainder of the game.  Id. at

---

[2] For purposes of the defendants' Motions to Dismiss, the court takes the facts alleged in the Amended Complaint as true and draws all inferences in the plaintiff's favor.  See Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

[3] The Amended Complaint explicitly alleges two separate sets of facts, with respect to the same incident, for the negligence-based Counts (Counts One through Five) and the recklessness Counts (Counts Six and Seven).

3, ¶¶ 17–18.  Mercier alleges that she suffered a concussion and other injuries.  Id. at
4–6, ¶¶ 22–24.

      B.  Counts Six and Seven

      Mercier told Tawney that she had been hit in the head, that her eyes were blurry,
and that she needed to sit down.  Am. Compl. at 8, ¶ 10.  She sat on the bench for
approximately five minutes, after which Tawney asked Mercier whether she was ready
to return to the game.  Id. at 8–9, ¶¶ 11, 16.  Mercier re-entered the game.  Id. at 9,
¶ 18.  During one play, she lost her balance and alleges that she felt disoriented.  Id. at
9, ¶¶ 18, 20.  Sometime thereafter, Mercier was struck in the head a second time by a
player on Greenwich's team.  Id. at 9, ¶ 21.  Mercier asked to be removed from the
game.  Tawney removed her and did not put her back in for the remainder of the game.
Id. at 9, ¶¶ 22–23.

      Mercier alleges that Tawney was aware of the symptoms of head injuries and
concussions and had received "training and education in the prevention, recognition[,]
and treatment of head injuries."  Id. at 8, ¶ 13.  Mercier also alleges that Tawney was
aware that Westminster protocol required that athletes exhibiting symptoms of a
concussion could not return to play before being evaluated by an athletic trainer or
physician.  Id. at 9, ¶ 14.  Mercier also alleges that Tawney was charged with
"protecting his players from injury as much as possible."  Id. at 9, ¶ 15.

## III.  STANDARD

      When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable
claim by making allegations that, if true, would show that the plaintiff is entitled to relief.

See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'show that the pleader is entitled to relief'" (alteration omitted)).  The court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 559 U.S. 1, 4 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard.  See Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).  The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by

Rule 8(a)(2)").  However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief.  As the Court explained in Iqbal, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (alterations, citations, and internal quotation marks omitted).  Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

## IV.    DISCUSSION

### A.    The Westminster Defendants's Motion to Dismiss

#### 1.    Negligence

Mercier argues that the Westminster Defendants were negligent in failing to have Mercier examined and evaluated after the first strike to her head; in failing to remove Mercier from the game "as a result of her concussion like symptoms"; and in refusing to keep Mercier out of the game until she "received written clearance from a licensed health care professional."  Am. Compl. at 7, ¶ 22.

The Westminster Defendants argue that Connecticut law bars negligence claims in the context of competitive contact sports.  In Jaworski v. Kiernan, 241 Conn. 399 (1997), the Connecticut Supreme Court adopted a reckless or intentional conduct standard of care for co-participants in contact team sports.  See id. at 408.  In doing so,

the court first conducted a threshold inquiry to ask whether the harm to the plaintiff was
foreseeable.  See id. at 405–07.  Concluding that it was, the court then considered four
factors to determine the extent of a co-participant's responsibility:

> (1) The normal expectations of the sports in which the plaintiff and
> defendant were engaged; (2) the public policy of encouraging continued
> vigorous participation in recreational sporting activities while weighing the
> safety of the participants; (3) the avoidance of increased litigation; and (4)
> the decisions of other jurisdictions.

Id.  More recently, this court applied the rule in Jaworski to a co-participant's coach and
that coach's employer.  See Trujillo v. Yeager, 642 F. Supp. 2d 86 (D. Conn. 2009).
Analyzing the situation under the four factors in Jaworski, this court concluded that the
Connecticut Supreme Court would find that reckless or intentional conduct is "the
appropriate standard of care to be imposed on coaches for injuries caused by their
players."  Id. at 91.

Turning to the situation before this court today—a player's lawsuit against her
own coach arising out of conduct at a competition—the court first considers the
foreseeability inquiry.  "Determining foreseeability requires analyzing whether a
reasonable person in the defendant's position, knowing what he knew or should have
known, would have anticipated the harm that resulted from his actions."  Id. at 89.  The
Amended Complaint alleges that Mercier was struck in the head and told Tawney that
"she was really dizzy and her eyes were blurry and she needed to sit down."  Am.
Compl. at 2, ¶ 10.  The Amended Complaint also alleges that, approximately five
minutes later, Tawney "asked her if she was ready to go in."  Am. Compl. at 3, ¶ 12.  A
coach can reasonably foresee that failing either to have a player checked out or to keep
a player out of a game after that player complained of dizziness and blurred vision might

result in the type of injuries that allegedly resulted in this case.  Thus, on the facts pled, the court concludes that the injury was foreseeable.

The court next turns to the four factors analyzed in Jaworski and Trujillo.  The first factor is the normal expectations of the sport in which Mercier and Tawney were engaged.  "[T]he Connecticut Supreme Court made clear in Jaworski that the normal and reasonable expectations of participants in contact team sports include the potential for injuries."  Trujillo, 642 F. Supp. 2d at 90.  Similarly, here, Mercier had a reasonable expectation of injury while playing in the basketball game.

The second factor weighs the "public policy of encouraging continued vigorous participation in recreational sporting activities" against "the safety of the participants." Jaworski, 241 Conn. at 408.  In Trujillo, this court reasoned that "[h]olding coaches liable for negligence in training athletes under their care who recklessly or intentionally injure other individuals could dampen coaches' willingness to aggressively coach their athletes."  Trujillo, 642 F. Supp. 2d at 90.  Although that specific concern is less applicable here, the general principle applies.  Coaches are often required to make split-second decisions during a game, and holding coaches liable for negligence for such decisions, including player substitution decisions, would dampen their willingness to coach aggressively and would "unreasonably threaten to chill competitive play."  Id. at 91.

The third factor is the avoidance of increased litigation.  In Jaworski, the Connecticut Supreme Court reasoned that "there exists the potential for a surfeit of lawsuits when it becomes known that simple negligence . . . will suffice as a ground for recovery for an athletic injury."  See Jaworski, 241 Conn. at 410.  That concern remains

relevant in this case.  Holding coaches to a negligence standard of conduct for decisions made during athletic competitions would certainly create an influx of litigation against coaches and schools for injuries directly caused by other players.

The final factor is the decisions of other jurisdictions.  The Westminster Defendants cite two helpful cases.  In Kahn v. East Side Union High School Dist., 75 P.3d 30 (Cal. 2003), the plaintiff, a high school swimmer broke her neck attempting a dive at a junior varsity competitive swim meet.  She alleged that her coach breached his duty of care to her by insisting, despite her objections, lack of expertise, and fear of diving, that she dive at the swim meet.  Id. at 32.  The California Supreme Court noted that California (like Connecticut) holds co-participants in a sport to a recklessness or intentional conduct standard of care.  Id.  Acknowledging that the relationship between a coach and a student "is different from the relationship between coparticipants in a sport," the court nonetheless applied the more stringent standard of care to situations where a coach failed to provide adequate instruction or supervision before directing the player to take action that resulted in injury.  Id.  The court reasoned that a coach's role "could be improperly chilled by too stringent a standard of potential legal liability."  Id.

In Karas v. Strevell, 884 N.E.2d 122 (Ill. 2008), a hockey player brought a negligence action against co-participants, officials, and the league, among others.  In concluding that non-participant defendants were exempt from negligence-based claims, the Supreme Court of Illinois reasoned that

> coaching and officiating decisions involve subjective decisionmaking that
> often occurs in the middle of a fast moving game.  It is difficult to observe
> all the contact that takes place during an ice hockey game, and it is
> difficult to imagine activities more prone to second-guessing than coaching
> and officiating.   Applying an ordinary negligence standard to these

decisions would open the door to a surfeit of litigation and would impose an unfair burden on organizational defendants . . .

Id. at 137.

Both of these decisions weigh in favor of rejecting a negligence standard of care. Mercier, like the plaintiff in Kahn, seeks to hold her coach liable in negligence for conduct related to his supervision of her during a competitive event.  As in Kahn, holding coaches such as Tawney to a negligence standard of care could improperly chill the coach's role, which is to push athletes to perform in the context of a competition. Additionally, as the Karas court highlighted, coaching decisions involve split-second, subjective decisions.  Because such decisions are particularly prone to second-guessing, permitting a negligence-based standard of care "would open the door to a surfeit of litigation and would impose an unfair burden on" coaches such as Tawney. See Karas, 884 N.E.2d at 137.

Mercier also cites cases from other jurisdictions.  However, those cases are distinguishable because they all involve claims arising out of school practices rather than competitions.  See, e.g., Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1363, 1369 (3d Cir. 1993) (holding that university owed negligence-based duty of care to intercollegiate athlete engaged in practice for "school-sponsored intercollegiate athletic activity for which he had been recruited"); Beckett v. Clinton Prairie Sch. Corp., 504 N.E.2d 552, 554 (Ind. 1987) (holding that school personnel had duty to exercise ordinary and reasonable care in supervision of eighteen-year-old during baseball practice); Leahy v. Sch. Bd. of Hernando Cnty., 450 So.2d 883, 884–85 (Fla. Ct. App. 1984) (finding that school board owed duty to properly supervise athletes participating in school-approved team practice on school property).

9

Based on the analysis above, the court concludes that the Connecticut Supreme Court would hold the Westminster Defendants to a recklessness or intentional conduct standard of care for the actions alleged in the Amended Complaint.  Accordingly, the court grants the Westminster Defendants' Motion to Dismiss with respect to Counts Two and Four of the Amended Complaint.

2. <u>Negligence Per Se</u>

Mercier also argues that he Westminster Defendants "had a statutory duty [under Conn. Gen. Stat. § 10-149c] to remove her from the game "as a result of her concussion like symptoms" and to keep her out of the game "until she received written clearance from a licensed health care professional."  Am. Compl. at 7, ¶ 22(b)–(c).  The court does not need to determine whether, as the Westminster Defendants argue, section 10-149c does not apply to them.  These Counts, like Counts Two and Four, sound in negligence. Accordingly, for the same reasons described in Part IV.A.1, the court grants the Westminster Defendants' Motion to Dismiss with respect to Counts Three and Five of the Amended Complaint.

3. <u>Recklessness</u>

Finally, Mercier alleges recklessness against the Westminster Defendants.  With respect to her recklessness claims, she alleges additional facts beyond those alleged with respect to her negligence-based claims.  <u>See</u>, <u>supra</u>, Part II.B.  The Westminster Defendants argue that the recklessness claims should be dismissed because they are time-barred and do not relate back to the claims in the original Complaint and, even if they do relate back, that the Amended Complaint does not plausibly allege facts permitting a finding of recklessness.

10

a.  The Relation Back Doctrine

Under Connecticut law, recklessness claims must be brought "within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered."  Conn. Gen. Stat. § 52-584.  Mercier raised recklessness claims for the first time in the Amended Complaint, which was filed on March 13, 2013.  She alleges that her injury occurred on January 4, 2011, which is more than two years earlier.  Accordingly, her recklessness claims are untimely unless they relate back to her original Complaint.

Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading "relates back" to the date of the original pleading if the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading."  6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1497 (3d ed. 2010).  Moreover, the Second Circuit has repeatedly held that a "revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original," so long as "the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading."  White v. White Rose Food, 128 F.3d 110, 116 (2d Cir. 1997); see also Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 125 (2d Cir. 1994) ("Travelers' amended complaint brings claims . . . based on the very series of transactions and

occurrences alleged in the original complaint.  Accordingly, the claims in Travelers'
amended complaint relate back to the time of the original complaint.").

Here, the recklessness claims "relate back" to the claims in the original
Complaint because they are based on the same series of transactions and occurrences:
the basketball game between Greenwich and Westminster and the decision to have
Mercier return to the game after she was struck on the head and told Tawney of her
symptoms.  The additional claims are essentially alternative theories of liability for the
same conduct alleged:  although the original claims are styled as negligence and the
new claims as recklessness, both sets of claims are based on the theory that Tawney
improperly permitted Mercier to re-enter the game without first receiving the appropriate
medical treatment, despite the fact that she exhibited symptoms of a concussion or
other head injury.  Moreover, both the additional claims and the original claims were
brought against the Westminster Defendants.  Thus, "the factual situation upon which
the action depends remains the same" and was "brought to [the Westminster
Defendants'] attention by the original pleading."  See 6A Wright, Miller & Kane, Federal
Practice and Procedure § 1497.

Accordingly, the court concludes that the new claims in the Amended Complaint
"relate back" to those in the original Complaint.

b.  Rule 12(b)(6)

The Westminster Defendants argue that, even if the recklessness claims relate
back, they should nonetheless be dismissed for failure to plausibly allege facts that
would amount to recklessness.  The Connecticut Supreme Court has defined
recklessness as follows:

> Recklessness is a state of consciousness with reference to the
> consequences of one's acts. It is more than negligence, more than gross
> negligence. The state of mind amounting to recklessness may be inferred
> from conduct. But, in order to infer it, there must be something more than
> a failure to exercise a reasonable degree of watchfulness to avoid danger
> to others or to take reasonable precautions to avoid injury to them.
> Wanton misconduct is reckless misconduct. It is such conduct as
> indicated a reckless disregard of the just rights or safety of others or of the
> consequences of the action.

Dubay v. Irish, 207 Conn. 518, 532–33 (1988) (alterations, internal citations, and

internal quotation marks omitted). Reckless conduct involves "an extreme departure

from ordinary care, in a situation where a high degree of danger is apparent. . . . [S]uch

aggravated negligence must be more than any mere mistake resulting from

inexperience, excitement, or confusion, and more than mere thoughtlessness or

inadvertence, or simply inattention." Id. at 533. An actor "must recognize that his

conduct involves a risk substantially greater than that which is necessary to make his

conduct negligent." Bishop v. Kelly, 206 Conn. 608, 614–15 (1988) (alterations,

citations, and internal quotation marks omitted).

The facts, as pled in the Amended Complaint, plausibly support a claim of

recklessness. Admittedly, the Amended Complaint does not allege that Tawney

observed Mercier being struck in the head. See Am. Compl. at 2, ¶ 8 (alleging Mercier

was hit in the head, but failing to allege that Tawney saw it occur). However, the

Amended Complaint alleges that Mercier told Tawney she had been hit in the head, that

her eyes were blurry, and that she needed to sit down. Id. at 8, ¶ 10. The Amended

Complaint also alleges that, while on the bench, Mercier "uncharacteristically sat quietly

with her head in her hands and leaning on her knew." Id. at 8, ¶ 11. The Amended

Complaint further alleges that Tawney was aware of the symptoms of head injuries and

had been trained and education in recognizing, preventing, and treating such injuries. Id. at 8 ¶ 13.

The Amended Complaint then alleges that Tawney later asked Mercier whether she was ready to go back into the game.  Id. at 9, ¶ 16.  Even if Tawney did not intend for his request to constitute an order, one could find that asking Mercier to return to a game, after she told Tawney she had been struck in the head and had blurry vision, constituted "an extreme departure from ordinary care."  Dubay, 207 Conn. at 533.  One could also find that failing to request and provide medical treatment for Mercier after learning she had been struck in the head and had blurry vision involved "a reckless disregard of the just rights or safety of" Mercier.  Id.

Based on the above, the court denies the Westminster Defendants' Motion to Dismiss with respect to Counts Six and Seven of the Amended Complaint.

B.  Greenwich's Motion to Dismiss

Greenwich argues that Mercier's negligence claim against it should be dismissed because it had no duty to provide Mercier a trainer; because Mercier failed to attach a section 52-190a certificate as required under state law; because the standard for injuries to participants in competitive sports is recklessness; and because Mercier failed to plausibly allege proximate causation.

Mercier alleges that Greenwich had a duty to provide Mercier, a member of the opposing school's team, with a trainer during the game.  See Am. Compl. at 3, ¶ 20. Mercier also alleges that "the Greenwich trainer was an agent, servant or employee of Greenwich."  Id. at 3, ¶ 21.  Greenwich argues that Mercier has failed to plausibly allege that Greenwich owed such a duty to Mercier.

Connecticut law "does not recognize a duty in the air."  Waters v. Autuori, 236 Conn. 820, 826 (1996) (citation and internal quotation marks omitted).  "Where there is no duty, there can be no actionable negligence.  Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence."  Frankovitch v. Burton, 185 Conn. 14, 20 (1981) (citation and internal quotation marks omitted).

Mercier argues that Greenwich's position that it owes no duty to her is "premature" and that "discovery is necessary to show Greenwich owed a duty to the opposing team."  Pl.'s Mem. in Opp. to Greenwich's Mot. to Dismiss (Doc. No. 38) ("Pl.'s Opp. to Greenwich") at 2.  She also argues that "[f]urther discovery is also needed to infer a duty on the part of Greenwich" and to show "whether Greenwich had a school policy requiring supervision and medical attention to all athletes."  Id.  According to Mercier, "if the Court accepts as true the fact that Greenwich had a duty to provide an athletic trainer to the Plaintiff, the court is able to make a 'reasonable inference that the defendant is liable' and the Complaint must survive Greenwich's Motion to Dismiss."  Id.

The tenet that a court must accept a complaint's allegations as true does not apply to conclusory statements that simply recite the elements of a cause of action.  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  By asking the court to assume that Greenwich "was responsible for furnishing a trainer to attend to any injuries suffered by players on either team," Am. Compl. at 3, ¶ 20, Mercier is asking the court to assume that she has met one of the elements of her cause of action, namely, that Greenwich owed a duty to Mercier.  The Amended Complaint alleges no facts to support this conclusion, and the court will not make such an assumption.

15

Because Mercier has failed to plausibly allege facts showing that Greenwich owed a duty to Mercier, the court does not proceed to evaluate the remaining arguments presented by Greenwich.  The court grants Greenwich's Motion to Dismiss Count 1 of the Amended Complaint.

## V.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Greenwich (Doc. No. 17) is GRANTED, and the Motion to Dismiss filed by the Westminster Defendants (Doc. No. 27) is GRANTED in part as to Counts Two through Five of the Amended Complaint and DENIED in part as to Counts Six and Seven of the Amended Complaint.  Further, the original Motion to Dismiss filed by the Westminster Defendants (Doc. No. 15) is terminated as moot, in light of the filing of Doc. No. 27.  Mercier has until **August 15, 2013** to replead her claims to plausibly allege that Greenwich had a duty to Mercier, if she can do so under the standards set forth above.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of July, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge